UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE M. FRITTY,

                      Plaintiff,

           v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**17-CV-00769F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                            AMY C. CHAMBERS, and
                            KENNETH R. HILLER, of Counsel
                            Attorneys for Plaintiff
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York 14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York 14202
                                    and
                            HAETANO SHAMSOONDAR,
                            Special Assistant United States Attorneys, of Counsel
                            United States Attorney's Office
                            c/o Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza
                            Room 3904
                            New York, New York 10278
                                    and

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

DENNIS J. CANNING and
JOLETTA MARIE FRIESEN,
Special Assistant United States Attorneys, of Counsel
c/o Social Security Administration
Office of General Counsel
601 East 12th Street
Room 965
Kansas City, Missouri  64106

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 15).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 26, 2018 (Dkt. 12), and by Defendant on June 22, 2018 (Dkt. 16).

## BACKGROUND

Plaintiff Michelle M. Fritty ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on March 21, 2014, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges she became disabled on May 13, 2013, based on bilateral carpal tunnel, elbow tendinitis, and an inability to grasp or make a fist.  AR[2] at 163.  Plaintiff's application was denied on June 25, 2014, AR at 75-84, and at Plaintiff's timely request, on August 30, 2016, a hearing was held in Buffalo, New York, by video conferencing before administrative law judge Benjamin

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on February 22, 2018 (Dkt. 7).

Chaykin ("the ALJ"), located in Falls Church, Virginia.  AR at 25-66.  Appearing and testifying at the hearing were Plaintiff, with legal counsel Kelly Laga, Esq ("Laga"), and vocational expert Mitchell Schmidt ("the VE").

On September 29, 2016, the ALJ issued a decision denying Plaintiff's claim, AR at 8-24 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council, with Laga appointed to represent Plaintiff on her administrative appeal.  AR at 125.  On June 16, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-3.  On August 9, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On April 26, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 12) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12-1) ("Plaintiff's Memorandum").  On June 22, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to the Local Standing Order on Social Security Cases (Dkt. 16-1) ("Defendant's Memorandum").  In further support of Plaintiff's Motion, Plaintiff filed on July 13, 2018, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED. The case is remanded for further proceedings consistent with this Decision and Order.

**FACTS**[3]

Plaintiff Michelle M. Fritty ("Plaintiff" or "Fritty"), born September 8, 1962, was 50 years old as of May 13, 2013, her alleged disability onset date ("DOD"). AR at 31, 163. Plaintiff has an associate's degree in court reporting and previously worked as a wine tasting representative, cashier, a court clerk, and a court reporter, and last worked in December 2014. AR at 33, 36 164. As of the August 30, 2016 administrative hearing, Plaintiff lived with her boyfriend and had a driver's license. AR at 32.

Plaintiff's medical history establishes she began seeking treatment from orthopedic surgeon A. Marc Tetro, M.D. ("Dr. Tetro"), for work-related bilateral carpal tunnel syndrome and diffuse flexor tenosynovitis (inflammation of fluid-filled sheath covering tendons and causing joint pain, swelling, and stiffness), in December 2000, and underwent surgical endoscopic carpal tunnel release on the right on June 6, 2002, and on the left on September 12, 2002. AR at 212. Following the surgeries, Plaintiff initially reported improvement in her symptoms, but later experienced increasing hand and wrist pain, numbness, and tingling, AR at 39-40, and on November 12, 2013, resumed treatment with Dr. Tetro for recurrent bilateral carpal tunnel syndrome. AR at 189-218, 227-33.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

4

A July 13, 2011 MRI of Plaintiff's right knee showed a small meniscus tear, a Grade II tear of the medial collateral ligament, small joint effusion, and arthritic changes. AR at 260. In September 2015, Plaintiff fell and injured her right knee resulting in pain and swelling, and Plaintiff now claims limitations with standing. AR at 38, 49, 236-40, 303-06. On October 20, 2015, X-ray imaging of Plaintiff's knee showed moderate lateral compartment and patellofemoral degenerative changes and Plaintiff was diagnosed with a right knee anterior contusion with exacerbation of lateral compartment and patellofemoral osteoarthritis for which a conservative course of treatment, including icing, anti-inflammatory medications, and compression of the knee joint, was recommended, and an intra-articular steroid injection was administered. AR at 238-39. Plaintiff responded well to the steroid injection and on December 1, 2015, Plaintiff was referred for physical therapy. AR at 240, 307.

MRIs of Plaintiff's right shoulder showed a complete tear of the supraspinatus tendon (rotator cuff tear), AR at 248 (July 21, 2009), and 258 (January 28, 2012), for which surgery has been recommended. AR at 48. On November 8, 2013, Plaintiff sustained a right-hand contusion, and MRI of Plaintiff's right hand on February 19, 2014, showed mild sprains of the collateral ligaments of the index and middle finger PIP joints, and the radial aspect of the index finger MCP joint, some nonspecific edema. AR at 268, 316-17. Plaintiff also has a right wrist ganglion cyst, and right elbow lateral epicondylitis. AR at 316-17. On March 26, 2014, bilateral upper extremity diagnostic study showed electrodiagnostic evidence of a right ulnar nerve mono neuropathy. AR at 316.

Plaintiff maintains her impairments have rendered her unable to perform such clerical tasks as answering telephones, and filing, and caused her to quit her town clerk job in 2012. AR at 39-40. Since applying for disability benefits, Plaintiff worked as a retail clerk at two different stores but quit both jobs because of impaired fine motor skills and an inability to lift heavy boxes and items. AR at 39-44.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

6

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.   Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

7

of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through June 30, 2018, AR at 13, Plaintiff has not engaged in substantial gainful activity since May 18, 2013, her alleged disability onset date, *id.*, Plaintiff suffers from the severe impairments of right hand sprain with tenosynovitis, and right elbow lateral epicondylitis, *id.* at 13-14, but that Plaintiff's other medically determinable impairments, including hypertension, anemia, a right knee sprain and

degenerative joint disease, history of right rotator cuff tear, degenerative disc disease, a fatty liver, history of bilateral carpal tunnel syndrome, and alcohol use disorder do not cause more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 14-15, such that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any impairment in the Listings in Appendix 1, *id.* at 15-16, and that Plaintiff retains the RFC to perform medium work, except for only occasionally climbing ropes, scaffolds and ladders, but can frequently climb ramps and stairs, stoop, crouch, kneel and crawl, and reach, handle, finger and feel with her dominant right upper extremity. AR at 16-19. 23-27. The ALJ concluded Plaintiff has no PRW and, thus, no transferable job skills,[6] but given her age of 50, her education, and ability to communicate in English, and RFC for medium work, Plaintiff is capable of performing work existing in significant numbers in the national economy including work as a hand taper, dryer attendant, and rug cutter, *id.* at 19-20, and, as such, is not disabled as defined under the Act. *Id.* at 20. Plaintiff does not contest the ALJ's findings with regard to the first, second, and third steps of the five-step analysis, but argues that at step four, the ALJ improperly evaluated Plaintiff's RFC, specifically her degenerative and neuropathy conditions, Plaintiff's Memorandum at 15-22, failed to develop the record by obtaining a physical functional assessment to close an evidentiary gap regarding Plaintiff's impairments and activities, *id.* at 22-27, which caused the ALJ to erroneously conclude Plaintiff is capable of medium work. *Id.* at 27-30. In opposition, Defendant argues substantial evidence in the record supports the

---

[6] The findings that Plaintiff has no PRW and, thus, no transferable skills, are erroneous insofar as the record establishes Plaintiff worked within the past fifteen years as a wine tasting representative, retail clerk, town court clerk, and court reporter. AR at 164.

ALJ's determination that many of Plaintiff's impairments are not severe, Defendant's Memorandum at 16-26, and the ALJ properly relied on the VE's testimony. *Id.* at 26-27. In further support of her motion, Plaintiff reiterates that the ALJ improperly evaluated the medical evidence and failed to develop the record as to an evidentiary gap. Plaintiff's Reply at 1-10. Because Plaintiff does not challenge the ALJ's findings at the first, second and third steps, the undersigned does not address them. A review of the administrative record establishes it does not contain substantial evidence supporting the ALJ's determination that Plaintiff retains the RFC to perform medium work.

In particular, the record is devoid of any functional assessment concerning the impact of Plaintiff's multiple impairments on her ability to perform work-related activities; rather, the only evidence of any such medical assessment is the November 15, 2013 evaluation by one Jason T. Braley, RPA-C ("PA Braley"), of Pinnacle Orthopedic and Spine Specialists, performed at the behest of the Workers' Compensation Board in follow up to Plaintiff's bilateral carpal tunnel syndrome which is considered a "well-documented work-related injury to the wrists and hands." AR at 210-15. PA Braley reported that although Plaintiff improved after the 2002 bilateral carpal tunnel release surgeries, she has recently noticed "progressive worsening of numbness and tingling into the hands primarily affecting the radial 3 digits," "diffuse stiffness, cramping, 'tremoring' of the hands with subjective weakness," and "significant discomfort to the right ring finger." *Id.* After physically examining Plaintiff, PA Braley diagnosed bilateral carpal tunnel syndrome, bilateral hand diffuse flexor tenosynovitis, and status post bilateral carpal tunnel release, *id.* at 212, assessing Plaintiff as "able to work in a restricted light duty capacity" with restrictions of "[n]o highly repetitive gripping or

grasping activities with her hands." *Id.* at 213. Further, if such light duty work were not available, Plaintiff would be considered to have a mild partial temporary disability. *Id.* The ALJ gave "little weight" to PA Braley's opinion because the opinion is not from an "acceptable medical source" as defined under 20 C.F.R. §§ 404.1513 and 416.913. AR at 19. This was erroneous because although not considered an "acceptable medical source" under the regulations, a physician assistant is considered an "other medical source" whose opinion is entitled to some weight, especially where such medical source is a treating source, working within a relevant area of specialty or expertise, and has an extensive relationship with the claimant. SSR 06-03p. Moreover, where the opinion is co-signed by a treating physician, here, Dr. Tetro, the opinion "'should be evaluated as having been the treating physician's opinion.'" *King v. Comm'r of Soc. Sec.*, __ F.3d __; 2018 WL 6074196, at * 3 (W.D.N.Y. Nov. 21, 2018) (quoting *Gandino v. Comm'r of Soc. Sec.*, 2018 WL 1033287, at *7 (N.D.N.Y. Feb. 22, 2018)). Because Dr. Tetro is one of Plaintiff's treating physicians having performed her bilateral carpal tunnel surgeries in 2002, and being the orthopedist to whom Plaintiff repeatedly returned for further treatment since experiencing recurrent bilateral carpal tunnel syndrome symptoms in 2013, PA Braley's opinion should have been considered by the ALJ as having emanated from Dr. Tetro. *See, cf., King*, 2018 WL 6074196 at *4 (declining to treat physician assistant's opinion, co-signed be medical doctor, as from an acceptable medical source because co-signing physician was not claimant's treating physician). Moreover, accepting the ALJ's determination to afford PA Braley's opinion "little weight" because Braley is not an acceptable medical source renders the ALJ's determination that Plaintiff retains the RFC for medium work unsupported based on plain legal error.

Under such circumstances, the ALJ is required to request a medical opinion as to the limitations posed by the claimant's impairments to her ability to perform work-related activities, unless the record otherwise contains sufficient evidence from which the ALJ can assess the claimant's RFC. *See, cf., Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. Apr. 2, 2013) (holding ALJ not required to obtain treating physician's opinion where opinions of consulting physician and disability examiner provided thorough description of claimant's condition and findings were supported by claimant's extensive medical record). By failing to do so, the ALJ essentially substituted his own lay opinion for that of an accepted medical authority or treating source. *Reithel v. Comm'r of Soc. Sec.*, 330 F.Supp.3d 904, 912 (W.D.N.Y. 2018) ("an ALJ cannot substitute her own lay opinion in place of established acceptable medical authorities or treating sources") (citing *Morsemen v. Astrue*, 571 F.Supp.2d 390, 397 (W.D.N.Y. 2008).

Simply put, PA Braley's assessment of Plaintiff as "restricted to light duty capacity" work with "no highly repetitive gripping or grasping activity" with her hands, AR at 213, and which does not take into account Plaintiff's right shoulder, elbow and knee impairments, does not support the ALJ's determination, AR at 16, that except for only occasionally climbing ropes, scaffolds, and ladders, Plaintiff can perform the medium work with frequent climbing of ramps and stairs, stooping, crouching, kneeling and crawling, reaching, handling, fingering and feeling with her dominant right upper extremity. Accordingly, the matter is REMANDED for further development of the record and a new hearing.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 12) is GRANTED; Defendant's Motion (Dkt. 16) is DENIED. The case is remanded to the ALJ for further proceedings, including obtaining a residual functional capacity assessment and a new hearing and decision, consistent with this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: January 23, 2019
          Buffalo, New York